404 A.2d 65.

STATE *vs.* GEORGE F. NEARY *et al.*

GEORGE F. NEARY *et al. vs.* WILLIAM E. LAURIE

JULY 24, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

JOSLIN, J.    The defendant, George F. Neary, is presently serving a 5-year sentence imposed in 1976 after he was found

to be a violator of a deferred sentence. He had received that sentence on July 3, 1972, after pleading nolo contendere in the Superior Court to an indictment charging that he had entered an apartment intending to commit larceny. Neary now contends that his indictment should be quashed because it fails to charge an offense.[1]

Four years after the deferred sentence was imposed, Neary appeared in the Superior Court, admitted violating the terms of that sentence and, following receipt of a presentence report, was brought before Judge Bourcier for sentencing. At that hearing, the prosecuting attorney advised the judge that Neary had received the deferred sentence on a charge of burglary, an offense carrying a minimum sentence of 5 years and a maximum of life imprisonment. A 5-year sentence was imposed. Two months later, however, Neary's motion to vacate that sentence was granted by Judge Bourcier. The judge confessed error in his earlier belief that the original indictment charged Neary with burglary. Indeed, he said that as he read the indictment, he was uncertain where "it fits," and that he was satisfied that he had improperly imposed a 5-year sentence for the violation. Accordingly, he vacated that sentence and referred the case to Judge Mackenzie, who had originally deferred imposition of sentence.

When that referral was considered on November 17, 1976, the prosecutor advised the court that in the state's view the indictment charged an offense specifically provided for by G.L. 1956 (1969 Reenactment) §11-8-3:[2] entry of a dwelling

---

[1]Neary also argues (1) that his plea of nolo contendere should be vacated and that he should be allowed to replead to the 1972 indictment, and (2) that the 5-year sentence was illegal. However, his initial contention that the indictment does not charge an offense is dispositive and makes unnecessary our consideration of those additional assertions.

[2]General Laws 1956 (1969 Reenactment) §11-8-3 reads as follows:

"Every person who, with intent to commit murder, rape, robbery, arson or larceny, shall enter any dwelling house at any time of the day or night, or who with such intent shall, during the daytime, enter any other building, or ship or vessel, shall be imprisoned not more than ten (10) years or be fined not more than five hundred dollars ($500) or suffer both such fine and imprisonment."

house with intent to commit larceny. In response to Judge Mackenzie's announcement that he was continuing the case so that he might have an opportunity to read a supplemental presentence report, defense counsel, relying on *State* v. *Fortes*, 114 R.I. 161, 174, 330 A.2d 404, 411-12 (1975), objected to the judge's consideration of any part of that report which referred to the offense giving rise to the violation. Judge Mackenzie gave no heed to the objection, stating that he wanted to ascertain what sort of person Neary was on the date of sentencing and that he had no "higher opinion of [the *Fortes* case] today than I did [when it came down]." On December 15, 1976, Neary was sentenced to 5 years for the violation. Neary's subsequent motion to vacate that sentence was denied and he appealed.

While that appeal was pending, Neary applied for post-conviction relief, claiming (1) that the underlying indictment did not charge an offense and should therefore be quashed; and (2) that his conviction should be vacated and he should be allowed to replead because, contrary to the rule enunciated in *Bishop* v. *Langlois*, 106 R.I. 56, 66-67, 256 A.2d 20, 25 (1969), the record of the proceeding at which his plea of nolo contendere was accepted did not disclose that the judge, prior to taking the plea, conducted an on-the-record examination in order to determine if it was being made voluntarily and with an understanding of the nature of the charges and the consequences of the plea. That application was denied by another judge, Judge Gallant, who observed with respect to the charge in the indictment that he, unlike Judge Bourcier, had "no difficulty in finding that although the section is not enumerated, the defendant is charged with a violation of §11-8-3." Neary appealed and his two appeals were consolidated for argument before this court.

We need consider only Neary's contention that the indictment alleging that he "did enter the apartment of one Charles Sullivan with intent to commit larceny" fails to charge him with a crime. In countering that argument, the state admits that the indictment does not refer to the specific statute upon which the offense is predicated. It argues, how-

ever, that such a designation is unnecessary under the rule adopted in §12-12-6[3] and *State v. Domanski,* 57 R.I. 500, 504, 190 A 854, 857 (1937). That rule makes such a designation unnecessary provided the indictment fully and plainly identifies the offense charged. The state argues that this indictment meets that requirement because "the apartment of one Charles Sullivan" is obviously someone's dwelling house. Therefore, it concludes that the word "apartment" in the indictment, viewed with common sense and not in an unduly technical fashion, charges the entry of a "dwelling house," and that consequently it is clear beyond question that the indictment charges an offense under §11-8-3.

The state's argument would be more convincing if §11-8-3 were the only statutory provision requiring consideration. Then, it could well be argued that common sense dictates that an apartment is a dwelling house. Section 11-8-3, however, is not the only statute that we need consider.

An examination of its legislative history discloses that §11-8-3, together with what is now §11-8-2, was originally adopted as a single, one-paragraph enactment.[4] The statute

---

[3]General Laws 1956 (1969 Reenactment) §12-12-6 provides:

"The indictment or complaint may charge, and is valid and sufficient if it charges, the offense for which the defendant is being prosecuted in one or more of the following ways:

(a) By using the name given to the offense by the common law or by a statute.

(b) By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of what offense is intended to be charged.

The indictment or complaint may refer to a section or subsection of any statute creating the offense charged therein, and in determining the validity or sufficiency of such indictment or complaint regard shall be had for such reference."

This statute has since been repealed by P.L. 1972, ch. 169, §20 and Super. R. Crim. P. 7(c) replaces it.

[4]Public Laws 1928, ch. 1209, §1, reads as follows:

"Every person who shall break and enter at any time of the day or night any dwelling house or apartment whether the same is occupied or not, or any outbuilding or garage attached to or adjoining any dwelling house,

retained its combined form in G.L. 1938, ch. 608. It was first sectionalized in the 1956 General Laws. That bifurcation, however, was not accomplished by the Legislature, but by the compilers who prepared the 1956 General Laws. In these circumstances, in order to ascertain what conduct the Legislature intended to criminalize, we must look to the original 1928 enactment and not to the separate parts into which that enactment was fragmented in 1956. *See State* v. *Brown*, 97 R.I. 115, 119, 196 A.2d 133, 136 (1963).

Viewed in this light, we find that in the first clause of the 1928 enactment, the Legislature used both the term "dwelling house," and the word "apartment" in a context that strongly suggests that the legislators intended neither that the two be synonymous nor that the term "dwelling house" include the narrower word "apartment." Had the Legislature intended either of those results, it could have accomplished that purpose by using only the term "dwelling house" and omitting the word "apartment." But just as it also used the words "outbuilding" and "garage" as meaning something different from a "dwelling house," so, too, did it use the word "apartment." We must assume that it did so intending to accomplish some useful purpose and contemplating that each of those words would have some force and effect. *See Providence Journal Co.* v. *Mason*, 116 R.I. 614, 624, 359 A.2d 682, 687 (1976); *In re Shepard Co.*, 115 R.I. 290, 298, 342 A.2d 918, 924 (1975); *Merciol* v. *New England Telephone & Telegraph Co.*, 110 R.I. 149, 153, 290 A.2d 907, 910 (1972).

This conclusion is supported by the fact that in the second clause of the 1928 enactment, now §11-8-3, the word "dwelling house" stands alone. The Legislature must have intended

without the consent of the owner or tenant of such dwelling house, apartment, building, or garage shall be imprisoned not more than three years or be fined not more than three hundred dollars or shall suffer both such fine and imprisonment; and every person who with intent to commit murder, rape, robbery, arson or larceny shall enter any dwelling house at any time of the day or night, or who with such intent shall during the daytime enter any other building, or ship or vessel shall be imprisoned not more than ten years or be fined not more than five hundred dollars or suffer both such fine and imprisonment."

to distinguish between the term "apartment" and the term "dwelling house" if it used them in contrasting ways in the same statute. We must conclude therefore that, as used in chapter 1209, the word "apartment," like the words "garage" and "outbuilding," has a meaning different from the term "dwelling house." The charge that Neary "enter[ed] the apartment of one Charles Sullivan with intent to commit larceny" is therefore not encompassed by the terms of §11-8-3.

In sum, then, Neary has "the constitutional right to be clearly informed of the accusation against him so that he may defend the same and later plead a conviction or acquittal in bar of a subsequent charge for the same offense, and, further so that the court, upon conviction, may pronounce sentence according to the right of the case." *State* v. *Domanski*, 57 R.I. at 504, 190 A. at 857. No indictment which deprives him of that guarantee can be sustained. This indictment does not measure up to that standard. Judge Bourcier made this clear when, in vacating the sentence he had imposed under the mistaken belief that the charge was burglary, he said:

> "I am satisfied that when I considered this matter as a burglary, violation burglary offense, that I was in error. No ifs, ands or buts about it.
>
> "As I read the indictment, I am not certain where it fits. I don't know where it sets, under 11-8-2 or 11-8-3. 11-8-2 requires breaking and entering, and 11-8-3 provides for entering a dwelling with intent to commit larceny. But this indictment charges entering an apartment, so I think the more we look at the indictment, the more we see problems here."

In the words of Judge Bourcier, the more we look at the indictment, the more we are satisfied that it does not charge an offense.

For the reasons stated, the defendant's appeal from the judgment in the postconviction proceedings is sustained, the judgment appealed from is reversed, and the case is

remanded to the Superior Court for quashal of the indictment and for such other proceedings in both appeals as may be appropriate.

*Seymour Posner*, Special Assistant Attorney General, for plaintiff.

*Allegra E. Munson*, Assistant Public Defender, for defendant.